**UNITED STATES of America, Plaintiff,**

**and**

**Richard Ganaway, II, et al., Plaintiff–Intervenors,**

v.

**CHARLESTON COUNTY SCHOOL DISTRICT and State of South Carolina, et al., Defendants.**

Civ. A. Nos. 2:81–0050–8, 2:82–2921–8.

United States District Court, D. South Carolina, Charleston Division.

June 28, 1994.

Jeremiah Glassman, Dept. of Justice, Washington, DC, Thomas J. Henderson, Pittsburgh, PA, Arthur McFarland, Charleston, SC, for plaintiff.

Robert Rosen, Alice F. Paylor, Charleston, SC, Travis Medlock, Atty. Gen., Columbia, SC, for defendant.

## ORDER

BLATT, Senior District Judge.

Since the above entitled action was remanded to this Court, *United States v.* *Charleston County School District,* 960 F.2d 1227 (4 Cir.1992), this Court has held various conferences with the attorneys involved. The Court and all of the attorneys agreed that the record was complete on the issues remanded by the Court of Appeals to this court, and that the taking of additional testimony would not be necessary. This Court suggested that the attorneys confer in an effort to agree on proper findings to be made by this Court to comply with the mandate of the Court of Appeals. The attorneys have submitted various proposed orders, and additional arguments by letters, in a determined, but unsuccessful, effort to reach agreement on the questions confronting the court. Finally, in September, 1993, the Court was advised that settlement was not a viable option, and the Court thereafter accepted final proposed orders or letter arguments.

This Court has now reviewed the proposed Orders and the letters received from counsel, the pertinent parts of the voluminous record in this case, and its trial notes, and it has reached its decision on the two issues remanded to it for its consideration by the Court of Appeals.[1]

### FINDINGS REGARDING THE MEMMINGER CONTROVERSY

In 1975, the Superintendent of the CCSD appointed a Committee to study and develop a plan for the conversion of Memminger Elementary School into a "model" school, which would incorporate many of the best practices in elementary education, so as to attract students of all races to that school in particular, and to other schools in Constituent District 20.[2] Memminger, a small predominantly black school located in Constituent District 20, was in danger of being closed because of its declining student enrollment, and District 20, as a whole, was losing many white students to private and suburban schools. This "model" school was to operate at the same per pupil cost as other elementa-

1. The plaintiff and the plaintiff-intervenors, having similar positions on the questions herein involved, will hereinafter be referred to as plaintiffs; the Charleston County School District—(CCSD)—and the State of South Carolina also have adopted similar positions and will hereinaf-ter be referred to as defendants unless otherwise designated.

2. Peculiar to Charleston County, the school districts are denominated as "constituent" districts.

ry schools in Charleston County, and it was designed to serve as a model for the development of similar instructional programs at other schools in the county. The concept projected College of Charleston faculty members working with the staff at Memminger to jointly design and implement an enriched elementary school curriculum and program. While the parties hereto differ on where the enrollees at Memminger were to reside, this Court finds that those charged with development of the plan had determined that the student body at Memminger would consist of those children living in the Memminger school zone, plus other children living in District 20, the latter group being accepted on a space available basis. There seemed to be agreement, and this Court so finds, that a relatively small number of children of College of Charleston faculty who were to help at Memminger, and who lived outside of District 20, should be allowed to attend Memminger, and that approval for the attendance of these children would be sought by those sponsoring the program from the constituent districts which may be involved in such inter-district transfers.

The model school plan was to be effective for the 1977–78 school year, and, as this Court has found, that the CCSD Board and District 20 Board had intended that only District 20 students were to attend Memminger, with those in the Memminger zone receiving priority, and that the only exception to this rule would be the children of the College of Charleston faculty heretofore mentioned. However, this Court finds that without approval from either CCSD or any other constituent board, the newly selected principal at Memminger, with the approval of the District 20 Board, "worked" a number of other schools in Charleston County, soliciting students for Memminger from both inside and outside of District 20. It appears to this court that this principal, Dr. Feldman, through his efforts, developed considerable interest in both District 20 and outside of District 20 among parents who desired to transfer their children to the model school at Memminger. These transfers were to be children who lived in areas of District 20 outside the Memminger zone, children from private schools, and children from other con-stituent districts. Dr. Feldman did an outstanding job in creating interest in this new school, and the proposed enrollment in Memminger for the 1977–78 school year doubled that of the 1976–77 year, and the proposed white enrollment at this school, and the white faculty for this school increased drastically. Several constituent districts granted transfers into District 20 for students who sought to move to Memminger. Just prior to the commencement of the 1977–78 school year, a number of students from a school in District 10 applied to the District 10 Board for permission to transfer to Memminger. The District 10 Area Superintendent, William Jefferson, who was black, recommended that such transfers not be granted because teachers had been employed and students assigned to the schools in District 10 based on projected student enrollment figures, and he insisted that transfers granted at such a late date would cause many administrative problems. The District 10 Board denied the requests to transfer based on Mr. Jefferson's recommendation, and this court finds no evidence in the record that these transfers were denied because of any racial reasons.

After denial by the District 10 Constituent Board of the transfers as set forth above, the parents of the students involved appealed this denial to the CCSD Board because they felt that the District 10 Board did not understand the difference in the educational program that would be instituted at Memminger and that followed in other District 10 schools. The CCSD Board not only sustained the action of the District 10 Board in denying the District 10 students permission to attend Memminger, but that Board also determined that it had no authority under South Carolina Law to allow such transfer, and that those students living outside of District 20, who had been given permission by their constituent boards to transfer, were enrolled illegally at Memminger. This Court finds no evidence that this decision of the CCSD Board was racially motivated in any respect.

As a result of this decision by CCSD, various constituent boards in Charleston County refused to give permission to students who desired to attend Memminger, and others rescinded permission that had previ-

ously been given to students for such transfer.

At the same time that the CCSD Board made its decision regarding the transfer issue, it sought a legal opinion from its attorney, Augustine T. Smythe, as to whether it could legally order transfers from one constituent district to another. Mr. Smythe wrote the CCSD Board that such transfers would not comply with applicable South Carolina law and, further, that pupil attendance zones in District 20 were subject to the jurisdiction of the United States District Court in the then pending case of *Millicent F. Brown v. School District No. 20*. Furthermore, Mr. Smythe advised the CCSD Board that attendance zones in other constituent districts were subject to separate desegregation plans, requiring approval of the United States Department of Health, Education and Welfare prior to changing such attendance zones.

This situation at Memminger had caused considerable controversy, and, at a special meeting just prior to the commencement of the school year, the CCSD Board met again on this matter; relying on Mr. Smythe's opinion, it reaffirmed its earlier decision.

The South Carolina Attorney General was brought into the controversy because two members of the South Carolina General Assembly wrote the Attorney General's office requesting its opinion on the legality of interdistrict transfers in Charleston County. The gist of the opinion thereafter issued by the Attorney General, and a second opinion by Mr. Smythe, was that interdistrict transfers, under South Carolina law, were not justified absent some unusual situation effecting a particular child.

Being dissatisfied with the action taken by the CCSD Board, other constituent districts, and the South Carolina Attorney General, the Constituent District 20 Board asked the CCSD Board to support a request by it to the United States District Court to modify its order in the *Millicent F. Brown* case to expressly permit students from outside District 20 to attend Memminger, but the CCSD Board, for what it felt were valid reasons, refused to join in the request, and this court finds no evidence that this refusal was based on any racial reason.

■ This attempt to establish Memminger as a model school became so embroiled in controversy that the Memminger proposal, as seen by those instigating it and those who were primarily sponsoring it, was destroyed. It appears that confidence in the school waned, and the enrollment at Memminger declined in the next few years, and Memminger at the time of the trial was once again an almost totally black school. While the record does reveal that "outsiders" may have acted for racial reasons, this Court finds no conduct of the defendants herein, or the Board of any constituent district, was racially motivated. Model or magnet schools have been established and have been successfully operated, since the attempt at Memminger, in Charleston County, and it appears to this Court, and it so finds, that the failure of Memminger to succeed may have been because this effort was somewhat "ahead of its time." The administrative decision by an outstanding black educator, William Jefferson, the Area Superintendent for District 10, sowed the seeds for the controversy that grew out of the Memminger effort, and this Court finds that neither Mr. Jefferson's decision, nor any official act by the CCSD Board or any constituent district board was taken for any racial discriminatory reason in an effort to prevent desegregation of any school in Charleston County.

## VALID REASONS FOR INTERDISTRICT TRANSFERS

In addition to the Memminger situation, the Court of Appeals remanded this action so that the District Court could "clarify what is a valid reason for an interdistrict transfer." (960 F.2d, at page 1237). Although this Court considers the setting of transfer policies as lying generally within the jurisdiction of the school authorities, so long as such policies are consistent with state and federal law, in order to alleviate future controversies, this Court hereinafter defines "with precision" certain legitimate reasons for granting interdistrict transfers.

In that there may be some confusion over what is a qualification for attending a school

in a particular constituent district, prior to setting forth a list of valid reasons for granting an interdistrict transfer, the Court first sets forth the qualifications for attendance at a school within a constituent district, as provided under South Carolina statutory law.

S.C.Code Ann. § 59–63–30 (1990) describes the qualifications for attendance in a district—(or, in the case of the CCSD, a constituent district)—as follows:

Children within the ages prescribed by § 59–63–20 shall be entitled to attend the public schools of any school district, without charge, only if qualified under the following provisions of this section:

(a) Such child resides with its parent or legal guardian;

(b) The parent or legal guardian, with whom the child resides, is a resident of such school district; or

(c) The child owns real estate in the district having an assessed value of three hundred dollars or more; and

(d) The child has maintained a satisfactory scholastic record in accordance with scholastic standards of achievement prescribed by the trustees pursuant to § 59–19–90; and

(e) The child has not been guilty of infraction of the rules of conduct promulgated by the trustees of such school district pursuant to § 59–19–90.

Effective June 12, 1991, the General Assembly enacted S.C.Code Ann. § 59–63–31 (1991 Supp.), which provides for "additional qualifications for attendance at public school", as follows:

Children within the ages prescribed in Section 59–63–20 also are entitled to attend the public schools of a school district, without charge, if:

(1) the child resides with one of the following who is a resident of the school district:

(a) a person who is not the child's parent or legal guardian to whom the child custody has been awarded by a court of competent jurisdiction;

(b) a foster parent or in a residential community-based care facility licensed by the Department of Social Services or operated by the Department of Social Services or the Department of Youth Services; or

(c) the child resides with an adult resident of the school district as a result of:

(i) the death, serious illness, or incarceration of a parent or legal guardian;

(ii) the relinquishment by a parent or legal guardian of the complete control of the child as evidenced by the failure to provide substantial financial support and parental guidance;

(iii) abuse or neglect by a parent or legal guardian;

(iv) the physical or mental condition of a parent or legal guardian is such that he or she cannot provide adequate care and supervision of the child; or

(v) a parent's or legal guardian's homelessness. as that term is defined by Public Law 100–77;

(2) the child is emancipated and resides in the school district; or

(3) the child is homeless or is a child of a homeless individual, as defined in Public Law 100–77, as amended.

In addition to the above requirements of this section, the child shall also satisfy the requirements of Section 59–63–30(d) and (e).

■ Under the circumstances set forth in these statutes, a student may attend school in a specified district when there is no interdistrict transfer involved. However, when a student desires to transfer from one district to another, S.C.Code Ann. § 59–63–490 (1990) comes into play and provides that:

When it shall so happen that any person is so situated as to be better accommodated at the school of an adjoining school district, whether special or otherwise, the board of trustees of the school district in which such person resides may, with the consent of the board of trustees of the school district in which such school is located, transfer such person for education to the school district in which such school is located, and the trustees of the school district in which the school is located shall receive such person into the school as though he resided within the district.

The Court finds that the following constitute valid, nondiscriminatory reasons for constituent district boards to allow student transfers between constituent districts:

   a. To attend a vocational program in another constituent district.

   b. To allow special education students to attend schools, which provide programs to meet their special needs, in constituent districts other than those in which they reside.

   c. To attend a countywide magnet program.

   d. For hardship reasons, as follows:

     (1) To attend school closer to where a parent works;

     (2) To attend a school as needed to accommodate a parents' after-school care needs (*e.g.*, a situation where both parents work extended hours and/or have extensive work-related travel, necessitating having a relative provide after-school care for the child);

     (3) To attend a school previously attended by the child;

     (4) To attend a school that offered courses not offered in the home district (*e.g.*, 3rd and 4th years in Spanish);

     (5) In instances where parents are planning to move to another district during the school year, allowing the child to attend the new school from the beginning of the year;

     (6) Health reasons; and

     (7) To attend school with sibling who is in a special program.

   e. For disciplinary and/or safety reasons necessitating the removal of a student from a potentially explosive situation involving other students; and

   f. To attend a school in another constituent district in which the child's parent is a teacher.

   ■ All of these reasons have been, and continue to be, valid reasons for interdistrict transfers. In adopting and setting forth these specific examples of valid reasons for transfers,[3] this Court does not intend to limit the reasons which the CCSD Board, or constituent district boards, might accept in support of a request for an interdistrict transfer, so long as such reasons are consistent with both federal and state law. In addition, the Court does not intend to require that a transfer must be granted if one or more of the above listed reasons are advanced in requesting the transfer. The constituent boards, and the CCSD Board to the extent that it may be legally involved, will continue to have the discretion to consider each request on its merits, provided such discretion is exercised in accordance with law.

   ■ In view of the opinion of the Court of Appeals, it would be illegal and inappropriate for the CCSD Board, or any constituent district board, to deny a request based on a valid reason for student transfers from one constituent district to another, simply because that transfer might have the effect of further desegregating either the transferor or transferee district, or a particular school therein. Interdistrict transfers between constituent districts which achieve better racial balance in a particular district, or school therein, would be commendable, and this result should be a favorable factor in the consideration of any request. While under no circumstances can an otherwise valid request for an interdistrict transfer be denied because such transfer may effectively promote integration of a particular district, or school therein, as the Court of Appeals said, at 960 F.2d, page 1237:

   "Where the sole motive behind a request to transfer between constituent districts is racial integration, *that request may properly be denied as there is no foundation to grant it.*" (emphasis added)

   ■ The Court of Appeals has held, and this Court certainly agrees, that a denial for racial reasons of an otherwise valid transfer request would constitute a violation of the equal protection clause of the Fourteenth Amendment, and the plaintiffs would be entitled to an *immediate injunction* preventing such Constitutional violation.

---

**3.** The parties hereto agree that these reasons should be adopted by this Court. The plaintiffs urged the Court to add an additional ground allowing transfers *solely* for integration purposes; the defendants objected to this ground, and the Court finds merit in this objection.

**1066**

Having disposed of all the issues remanded to it, this Court affirms its prior holding that CCSD operates, in all respects, as a unitary school system, and it is

ORDERED, that this action be dismissed, and the Clerk of this Court shall again enter final judgment for the defendants.

IT IS FURTHER ORDERED, that the Order of this Court dated March 5, 1984, regarding the disclosure of settlement discussions by the parties hereto be, and the same hereby is, vacated.

IT IS FURTHER ORDERED, that, pending any objection made within ten (10) days of the date of this Order, the Clerk of this Court shall, at the expiration of said objection period, return all the exhibits in this case to the parties who offered them, to be held by said parties until all proceedings herein are terminated.

IT IS FURTHER ORDERED, that each side shall pay their own costs *incurred before this Court* since its prior order of June 5, 1990.

IT IS SO ORDERED.